UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

DOROTHY JONES o/b/o SA,

                Plaintiff,

     v.                              **DECISION AND ORDER**
                                        **07-CV-0016 (VEB)**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

## I. Introduction

Plaintiff Dorothy Jones, on behalf of her minor son, S.A., challenges an

Administrative Law Judge's ("ALJ") determination that he is not entitled to

supplemental security income ("SSI") under the Social Security Act ("the Act").

Plaintiff alleges S.A. has been disabled since September 27, 2004, because of a

learning disability, diabetes, asthma, speech and language delays, and behavior

problems.  Plaintiff alleges S. A.'s impairments have significantly interfered with

his ability to function in an age-appropriate manner both in school and socially,

and therefore, he is entitled to payment of SSI under the Act.

## II.  Background

Plaintiff filed an application for SSI on September 27, 2004.  Her

application was denied initially and, under the prototype model of handling claims

without requiring a reconsideration step, Plaintiff was permitted to appeal directly

to the ALJ.  See 65 Fed. Reg. 81553 (Dec. 26, 2000).   Pursuant to Plaintiff's

request, an administrative hearing was held on June 6, 2006, before ALJ

Thomas Zolezzi, at which time Plaintiff, S. A., and their attorney appeared. The

ALJ considered the case *de novo*, and on August 18, 2006, issued a decision finding that Plaintiff was not disabled.  The Appeals Council denied Plaintiff's request for review on November 24, 2006.

On January 3, 2007, Plaintiff filed a Civil Complaint challenging Defendant's final decision and requesting the Court to review the decision of the ALJ pursuant to Section 205(g) and 1631(c)(3) of the Act, modify the decision of Defendant, and grant SSI benefits to Plaintiff.[1]  The Defendant filed an answer to Plaintiff's complaint on March 20, 2007, requesting the Court to dismiss Plaintiff's complaint.  Plaintiff submitted Plaintiff's Brief on May 4, 2007.  On May 10, 2007, Defendant filed a Brief In Support Of The Commissioner's Motion For Judgment On The Pleadings[2] pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  After full briefing, the Court deemed oral argument unnecessary and took the motions under advisement.

For the reasons set forth below, this Court finds no reversible error and finds that substantial evidence supports the ALJ's decision.  Thus, the Court affirms the decision of the Commissioner.

### III.  Discussion

**A.  Legal Standard and Scope of Review:**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. § 405(g), 1383 (c)(3); Wagner

---

[1] The ALJ's August 18, 2006, decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

[2] Although no motion for judgment on the pleadings was filed, the moving party was excused from such filing under General Order No. 18, which states in part: "The Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings…"

v. Sec'y of Health and Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if it is not supported by substantial evidence or there has been legal error. See  Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

       "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, the Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a

*de novo* review." <u>Valente v. Sec'y of Health and Human Servs.</u>, 733 F.2d 1037, 1041 (2d Cir. 1984).

On August 22, 1996, Congress enacted the Personal Responsibility and Work Opportunity and Reconciliation Act of 1996 (1996 Act), which amended the statutory standard for children seeking SSI benefits. <u>See</u> 42 U.S.C. § 1382c. In relevant part, the 1996 Act provides that an "individual under the age of 18 shall be considered disabled…if [he or she] has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." <u>See</u> 42 U.S.C. § 1382c(a)(3)(C)(i).

The regulations promulgated by the Social Security Administration (SSA) define "marked and severe functional limitations" in terms of "listing-level severity," *i.e.*, an impairment that meets, medically equals or functionally equals the severity of an impairment in the listings. <u>See</u> 20 C.F.R. § 416.926a(a). In accordance with the regulations, a child's functional limitations are evaluated in six broad areas or domains of functioning: (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for yourself [oneself]; and (vi) health and physical well-being. <u>See</u> 20 C.F.R § 416.926a(b).

The Commissioner has established a three-step sequential evaluation process to determine whether a child is disabled as defined under the Act. <u>See</u> 20 C.F.R. § 416.924. Specifically, the child must demonstrate: (1) that he or she

is not working; (2) that he or she has a "severe" impairment or combination or impairments; and (3) that his or her impairment or combination of impairments is of listing level severity in that it meets, medically equals or functionally equals the severity of a listed impairment.  See 20 C.F.R. § 416.924.  A child's medically determinable impairment or combination of impairments "functionally equals" a listed impairment if it results in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain.  See 20 C.F.R. 416.926(a).  A limitation is "marked" if it seriously interferes with a claimant's ability to independently initiate, sustain, or complete activities.  See 20 C.F.R. §416.926a(e)(2). A "marked" limitation is more than moderate but less than extreme. See id.

## B.  Analysis

### 1.      Commissioner's Decision

Applying the sequential evaluation in the instant case, the ALJ made the following findings: (1) the claimant was born on October 16, 1994.  Therefore, he was a school-age child on September 27, 2004, the date the application was filed, and is currently a school-age child (20 C.F.R. § 416.926a(g)(2)) (R. at 20);[3] (2) The claimant has not engaged in substantial gainful activity at any time relevant to this decision (20 C.F.R. §§ 416.924(b) and 416.972) (R. at 20); (3) The claimant has the following severe impairments: borderline intellectual functioning, asthma, insulin-dependent diabetes mellitus, behavior and speech problems (20 C.F.R. § 416.924(c)) (R. at 20); (4) The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R.

---

[3] Citations to the underlying administrative are designated as "R."

§§ 416.924, 416.925 and 416.926) (R. at 20); (5) The claimant does not have an impairment or combination of impairments that functionally equals the listings (20 C.F.R. §§ 416.924(d) and 416,926(a)) (R. at 20); and (6) The claimant has not been disabled, as defined in the Social Security Act, since September 27, 2004, the date the application was filed (20 C.F.R. § 416.924(a)) (R. at 28).  Ultimately, the ALJ determined that because S. A. was not disabled under section 1614(a)(3)(C) of the Social Security Act, Plaintiff, on behalf of S. A., was not entitled to supplemental security income (R. at 28).

### 2. Plaintiff's Claims

Plaintiff challenges the decision of the ALJ on the basis that it is not supported by the substantial evidence of record.  Specifically, Plaintiff alleges (a) the Appeals Council refused to remand this case even though the Administrative Law Judge ignored, and thus failed to clarify, the October 19, 2004 teacher questionnaire, the report of Fenzi Spencer, M.S., and the November 24, 2004 report of Annette Payne, Ph.D., in his findings on the claimant's ability to attend and complete tasks, (b) the Appeals Council refused to remand this case even though the Administrative Law Judge ignored, and thus failed to clarify, the November 24, 2004 of Fenzi Spencer, M.S., the November 24, 2004 report of Annette Payne, Ph.D., the March 2004 Triennial Review Report of Jason Hanley, School Psychologist, and the seven student referrals from October 5, 2005 to May 23, 2006 in his findings on the claimant's ability to interact and relate with others.  Further, the Appeals Council refused to remand this case even though the Administrative Law Judge misstated the findings of the July 28, 2006 Teacher

Questionnaire  in his findings on the claimant's ability to interact and relate with others, (c) the Appeals Council refused to remand this case even though the Administrative Law Judge misstated the findings of the July 28, 2006 Teacher Questionnaire by ignoring serious multiple impairments in his findings of the claimant's ability to care for himself. Further, the Appeals Council refused to remand this case even though by leaving out serious limitations [noted by the teacher] in the Teacher Questionnaire, the Administrative Law Judge engaged in a "selective review" of the record, and (d) the Appeals Council refused to remand this case even though the Administrative Law Judge erroneously found that the claimant had "less than marked" limitations in health and physical well-being, which was contradicted by the new and material evidence provided to the Appeals Council on November 3, 2006.  See Plaintiff's Brief, pp. 1-2.

Plaintiff alleges four challenges to the Commissioner's decision that the claimant was not disabled during the relevant time frame for her claim.  See Plaintiff's Brief, pp. 1-2).  Of Plaintiff's four challenges, three incorrectly allege errors made by the Appeals Council in failing to review and vacate the ALJ's decision, and in failing to remand the matter for further administrative proceedings.  Id.  Plaintiff's civil action before the Court may challenge only the determination of the ALJ that Plaintiff was not under a disability during the relevant time frame, and not the failure of the Appeals Council to remand the case for further administrative proceedings.  See 42 U.S.C. § 405(g).  Plaintiff's civil action must necessarily be directed at the decision of the ALJ, and not the failure of the Appeals Council to remand for further administrative proceedings.

Id.  Thus, where appropriate, the Court will consider each of Plaintiff's first three claims as though they had been properly framed with respect to the decision of the ALJ.

Plaintiff's fourth claim is properly directed to the Appeals Council.  That claim is also discussed in the decision below.

### a.    The ALJ Properly Determined S. A. Has Less Than a Marked Limitation In the Domain of Attending and Completing Tasks

Plaintiff's first challenge to the ALJ's decision is that it is not supported by substantial evidence, and is contrary to law, because the ALJ failed to give proper consideration and weight to a Teacher Questionnaire completed on October 19, 2004, a report from a State agency consultant speech and language examiner completed on November 24, 2004, and a report from a State agency examining psychologist written on November 24, 2004 (R. at 85-92, 129-132, 133-136).  See Plaintiff's Brief, p. 1.  Specifically, Plaintiff alleges that the evidence noted above supports a finding that S. A. has a marked limitation in the domain of attending and completing tasks.  See Plaintiff's Brief, pp. 4-5.  The Defendant argues that the ALJ correctly considered all of the evidence in the record, and found that Plaintiff has less than a marked limitation in this domain. See Defendant's Brief, p. 16.

Plaintiff points out that S. A.'s special education teacher rated him as having numerous "obvious" problems in paying attention, focusing long enough to finish assigned activities or tasks, carrying out multi-step instructions, changing from one activity to another without being disruptive, completing class and

homework assignments, and working at a reasonable pace (R. at 87).  The teacher rated S. A. as having a "serious" problem working without distracting himself or others.  State agency speech and language examiner, Fenzi Spencer, M.S., opined Plaintiff's severe receptive and expressive language delays, and his speech articulation delay, would "adversely affect his…ability to follow directions and instructions" (R. at 131).  State agency examining psychologist, Annette Payne, Ph.D., opined S. A. "has problems with attention and concentration…He has difficulty performing complex tasks and making appropriate decisions" (R. at 135).

However, other evidence included in the record suggests S. A. has less than a "marked" or "extreme" limitation in the domain of attending and completing tasks.  As examples, both Plaintiff and S. A. testified that he completed his school projects, but needed additional time (R. at 254).  The Teacher Questionnaire cited by Plaintiff as support for a "marked" limitation in the domain of attending and completing tasks also rated Plaintiff as having no problem sustaining attention during play and sports activities, and only a "slight" problem re-focusing to task when necessary, carrying out single step instructions, waiting to take turns, and organizing his own things or school materials (R. at 87).  Dr. Payne assessed S. A.'s concentration and attention as being only "mildly impaired" (R. at 135).

Further, on March 29, 2004, S. A.'s teachers noted in his Individualized Education Program (IEP) annual review and re-evaluation that while S. A. required a highly structured class with clear and consistent boundaries and

expectations, he worked well when working individually with minimal distractions (R. at 110).  He "manages best in a small group or in one to one instruction."  Id. This information is consistent with an evaluation of S. A. done by a school psychologist, Jason Hanley, Ph.D., in March 2004, and with a later IEP completed on April 15, 2005 (R. at 101, 212).

Moreover, S. A.'s records were reviewed by a State agency consultant, Anne Herrick, Ph.D., on December 17, 2004 (R. at 148-153).  Within the domain of attending and completing tasks, Dr. Herrick noted that S. A.'s teacher rated him as having a "serious problem" only in "working without distracting self and others" (R. at 150).  While Dr. Herrick did not examine S. A., it is well settled that an ALJ may rely upon the opinions of the state agency's medical and psychological consultants, since they are deemed to be qualified experts in the field of Social Security disability.  See 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), and 416.927(f)(2).  Thus, the Court finds that the ALJ properly considered the totality of the evidence presented with respect to S. A.'s functioning within the domain of attending and completing tasks, including the testimony of both Plaintiff and S. A., the assessments of S. A.'s teachers, the documentation provided by S. A.'s treating physicians, and the evaluations of State agency examining and consulting specialists, when finding that S. A. had less than a marked limitation in this domain.

**b.      The ALJ Properly Determined S. A. Has Less Than a Marked Limitation in the Domain of Interacting and Relating With Others**

Plaintiff's second challenge to the ALJ's decision is that it is not supported by substantial evidence, and is contrary to law, because the ALJ failed to give proper consideration and weight to a State agency speech and language evaluation completed by Fenzi Spencer, M.S., in which the evaluator opined S. A.'s severe receptive and expressive language delays, as well as his articulation delays, would adversely affect both his ability to be understood by others, and his ability to communicate in an age-appropriate manner (R. at 131). See Plaintiff's Brief, p. 5.  Plaintiff also points out that State agency examining psychologist, Dr. Payne, opined that S. A. would have difficulty interacting appropriately with adults and peers (R. at 135). Id. Plaintiff avers the opinions of the speech evaluator and Dr. Payne are supported by a March 2004 Individual Education Program review by S. A.'s school support team, wherein his teachers noted he "has a short attention span and low frustration level," seven school referral reports for various misdeeds carried out by S. A. during the eight month period from October 2005 through May 2006, and a July 28, 2006 questionnaire completed by S. A.'s teacher that indicated he had obvious problems with communication and rule-following, and serious problems playing cooperatively, managing anger, and showing respect for adults in authority (R. at 109, 197-200, 202-207, 227-228).

Citing some of the same evidence claimed by Plaintiff as persuasive that S. A. had at least a marked limitation in the domain of interacting and relating with others, the defendant argues substantial evidence supports the ALJ's finding that Plaintiff had less than a marked limitation in this domain. See Defendant's Brief, pp. 17-18.  As an example, while Dr. Payne opined S. A. "would have

difficulties interacting adequately with peers and adults," she also noted he had had a number of recent psychosocial stressors, including his medical problems and the death of his father (R. at 135-136).  With respect to S. A.'s speech and language problems, Dr. Payne reached a quite different conclusion from that of Fenzi Spencer, M.S. (R. at 131, 135).  The psychologist observed that S. A.'s speech was "fluent and clear.  His expressive and receptive language skills were adequate" (R. at 134).  Dr. Payne's assessment of S. A.'s language skills was corroborated by State agency physician Dr. Adler who observed that S. A.'s "speech appears quite normal to me at this time.  …he has no major speech impediment, as I could determine" (R. at 144, 146).  Further, in April 2005, S. A.'s speech and language abilities were tested as part of his Individualized Education Program (R. at 211-212).  No significant articulation errors were noted and S. A. was evaluated as functioning at his language ability level (R. at 211).

With respect to the Teacher's Questionnaire wherein S. A. was assessed as having both obvious and serious problems in the domain of interacting and relating with others, the Court notes Ms. Hoffman's evaluation is markedly inconsistent with information provided in S. A.'s 2004-2005 and 2005-2006 Individualized Education Programs, and with a Teacher Questionnaire completed by S. A.'s consultant teacher and school nurse in October 2004 (R. at 85-92, 107-117, 209-218).  As an example, in a 2004-2005 IEP completed on March 29, 2004, S. A. was assessed by his education team of special education and regular teachers, school nurse and speech therapist as enjoying group activities, having a good sense of humor (though not always appropriate), and liking to be helpful

to others for short periods of time (R. at 109).  It was also noted in this document that at times, S. A. bothered other students who were working or playing by name calling, poking or teasing.  Id.  A Teacher Questionnaire completed by S. A.'s consultant teacher and school nurse on October 19, 2004, revealed S. A. had no problems in the domain of interacting and relating with others.  In an IEP completed on April 15, 2005, S. A. was assessed by his education team as "making appropriate progress.  His behaviors may be immature at times, but he gets along well with others and enjoys socializing with his peers.  When he starts to display the immature behaviors, he can easily be redirected" (R. at 212).  The education team noted that S. A. "needs occasional reminders of appropriate classroom interaction with his peers."  Id.  Further, the Court notes the July 2006 Teacher Questionnaire, which reflects opinions regarding S. A.'s abilities to interact with and relate to others inconsistent with prior documentation, is not countersigned by a consultant teacher, school nurse, or any other member of S. A.'s education team (R. at 225-231).  It is impossible to tell if Ms. Hoffman's observations and opinions accurately reflect the observations and opinions of all members of S. A.'s education team.  While the Commissioner's regulations permit an ALJ to consider evidence of disability from other sources including educational personnel, the evidence must be detailed and complete.  See 20 C.F.R. § 404.1513(d)(2)(e).  In this case, the Teacher Questionnaire prepared by Ms. Hoffman was not.  Thus, the Court finds the ALJ considered the evidence proffered concerning S. A.'s abilities and limitations in the domain of interacting

and relating with others, and properly found he had less than a marked limitation in this domain.

      c.      **The ALJ Properly Determined S. A. Has Less Than a Marked Limitation in the Domain of "Caring For Yourself"**

Plaintiff's third challenge to the ALJ's decision is that it is not supported by substantial evidence, and is contrary to law, because the ALJ failed to give proper consideration and weight to the information contained in the July 28, 2006 Teacher Questionnaire completed by Ms. Hoffman, wherein she noted that in the domain of caring for yourself, S. A. had obvious problems being patient, caring for his physical needs, taking his medications as needed, identifying and satisfying his emotional needs, responding appropriately to changes in his environment, and knowing when to ask for help, and serious problems handling frustration appropriately and using appropriate coping skills to meet the demands of the school environment  (R. at 229).  See Plaintiff's Brief, pp. 6-7.  In support of her observations and opinions, Ms. Hoffman stated "[S. A.] needs supervision during instructional periods as he can get physical with peers in a teasing manner that often results in injury by 'accident.'  He has difficulty controlling this and accepting responsibility for it" (R. at 229).  Plaintiff points out that by ignoring Ms. Hoffman's assessment of S. A.'s obvious and serious limitations in the domain of "caring for yourself," the ALJ engaged in a selective review of the record.  See Plaintiff's Brief, p. 7.  The defendant argues that injuries to S. A. and other children cited by Ms. Hoffman as an indication of a marked limitation in this domain were sustained in childish horseplay and do not reflect a limitation in S. A.'s self care activities.  See Defendant's Brief, pp. 18-19.  Further, Defendant

notes S. A.'s testimony, as well as assessments of State agency examining and consulting physicians, reflect less than a marked limitation in the domain of "caring for yourself."  Id.

In a claim for SSI or DIB, an ALJ may not engage in a selective review of evidence, but must consider the evidence of record as a whole.  See  Clinton v. Chater, 79 F.3d 1007, 1010 (10th Cir. 1996).  ("In addition to discussing the evidence supporting his decision in a social security disability benefits case, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.")  While an ALJ is not required to discuss every piece of evidence, he or she should discuss evidence that, if believed, could lead to a finding of disability.  See Golembiewski v. Barnhart, 322 F.3d 912, 917 (7th Cir. 2003).  (". . . the ALJ ignored significant evidence supporting [the Plaintiff's] claim. The ALJ must evaluate the record fairly. Thus, although the ALJ need not discuss every piece of evidence in the record, Dixon v. Massanari, 270 F.3d 1171, 1176 (7th Cir. 2001),  the ALJ may not ignore an entire line of evidence that is contrary to the ruling, Zurawski, 245 F.3d at 888.")  See also Clifton v. Chater, 79 F.3d 1007, 1010 (10th Cir. 1996).

In this matter, it is clear that the ALJ considered the observations and opinions expressed by Ms. Hoffman in the Teacher Questionnaire, but did not find her evidence persuasive enough to overcome contrary evidence presented by Plaintiff and S. A., S. A.'s other teachers and school nurse, a State agency examining psychologist, and State agency consultants (R. at 27).  As an example, during his hearing before the ALJ, S. A. acknowledged he was

independent in his personal care (R. at 264).  Plaintiff testified S. A. had

knowledge of, and could follow, safety rules (R. at 265).  A Teacher

Questionnaire completed by S. A.'s consultant teacher and countersigned by his

school nurse revealed no problems in the domain of caring for yourself (R. at 88).

During his Individualized Education Program assessments, his teachers reported

he was well-groomed (R. at 109, 212).  After completing an examination of S. A.,

State agency psychologist Dr. Payne opined he was capable of his own self care

(R. at 135).  S. A.'s medical and other records were reviewed by two State

agency consultants, Dr. Deborah Bostic, M.D. and Anne Herrick, Ph.D., who

noted no limitations in the domain of caring for yourself.  Thus, the Court finds

the ALJ did not engage in a selective review, but considered all of the evidence

of record, when he made his finding that S. A. had less than a marked limitation

in the domain of "caring for yourself."

> ### d.    The Appeals Council Properly Denied Review of the Final Decision of the Commissioner

Plaintiff's last challenge to the final decision of the Commissioner is that

the Appeals Council improperly denied review of the decision after Plaintiff

submitted new evidence regarding S. A.'s diabetes that was relevant and

material to the time period for Plaintiff's claim.  See Plaintiff's Brief, pp.7-8.

Plaintiff alleges this new evidence supports her claim that S. A. has a marked

limitation in the domain of health and physical well-being.  Id.  Defendant argues

the new evidence is neither relevant nor material to the time period for Plaintiff's

claim.  See Defendant's Brief, pp. 19-21.

Guidance is given to the Appeals Council for handling evidence submitted after an ALJ's decision is issued in HALLEX, the Hearing, Appeals, and Litigation Manual published on-line by the Social Security Administration's Office of Disability Adjudication and Review.  See http://www.ssa.gov/OP_Home/hallex.html.  In general, "When a claimant or representative submits additional evidence, it must be both new and material to warrant the Appeals Council's consideration.  Evidence is new when it is not duplicative, cumulative or repetitive, and it is material when it affects the ALJ's findings or conclusions and relates to the time [period on or before the date of the ALJ's decision]…When new and material evidence has been submitted with a request for review, the analyst will apply the weight of the evidence rule instead of the substantial evidence rule in deciding whether to recommend review action to the Appeals Council."  See http://www.ssa.gov/OP_Home/hallex/I-03/I-3-3-6.html.  In its fiscal year 2005 Performance and Accountability Report, the Social Security Administration explained its view of the difference between substantial evidence and weight of evidence by stating, "Substantial evidence is defined as evidence, which, although less than a preponderance, nevertheless is sufficient to convince a reasonable mind of the credibility of a position taken on an issue, when no evidence on the opposing side clearly compels another finding or conclusion.  The 'substantial evidence rule' requires less in support of a finding or conclusion than the 'weight of evidence rule.'  Evidence on one side of an issue need not possess greater weight or be more convincing and credible to be 'substantial.'"  See SSA's FY 2005 Performance and Accountability Report, p. 76.

When new evidence is submitted to the Appeals Council with a request to review an ALJ's decision, an Appeals Council analyst must determine if the evidence is: (a) both new and material, (b) new, but not material, or (c) neither new nor material.  The analyst must also consider whether or not the evidence concerns both the issues and the time period considered by the ALJ.  See http://www.ssa.gov/OP_Home/hallex/I-03/I-3-5-20.html.  New evidence is not material to the various issues considered by the ALJ if the evidence shows a post-decision worsening of the claimant's condition and/or the onset of a new impairment.  Id.

While the Court has examined Plaintiff's new evidence and recognizes it may be pertinent to the issues considered by the ALJ, it is not material because it does not pertain to the time frame relevant to Plaintiff's claim.  Two months after the date of the ALJ's decision, S. A. was hospitalized on October 18, 2006, for diabetic ketoacidosis[4] (R. at 240-243).  He was released from the hospital on the following day with detailed instructions pertaining to his medication and diet (R. at 240-241).  While Plaintiff claims this hospitalization is material to her claim that S. A. has a marked impairment in the domain of health and physical well-being, the medical evidence, even including the October 2006 hospitalization, does not rise to the level of a marked impairment.

Clearly, S. A.'s diabetes is a severe impairment, and the ALJ recognized this in his decision (R. at 20).  In the time frame from December 31, 2004,

---

[4] Diabetic ketoacidosis (DKA) is a state of inadequate insulin levels resulting in high blood sugar and accumulation of organic acids and ketones in the blood. It is also common in DKA to have severe dehydrationand significant alterations of the body's blood chemistry.  See http://www.emedicinehealth.com/diabetic_ketoacidosis/article_em.htm.

through October 20, 2006, S. A. was hospitalized for diabetic ketoacidosis on three occasions for time periods ranging from two to five days (R. at 154-155, 179-181, 240-242).  However, S. A.'s blood sugar levels are controllable with the proper administration of insulin and care in following a diabetic diet.  As an example, when S. A. was released from the hospital in December 2005, his physician prohibited the use of herbal remedies and ordered that insulin be administered according to the directions given by S. A.'s pediatric endocrinologist (R. at 180).  When S. A. met with his pediatric endocrinologist on January 10, 2006, he told her his compliance with his diet and medication regimen had been poor (R. at 194).  One month later, on February 10, 2006, S. A. met with his pediatrician, who reported S. A was doing well controlling his blood sugar (R. at 192).  S. A. met with his pediatric endocrinologist again on June 12, 2006, and she noted he had been healthy and active since his last office visit, had not been hospitalized in the interim, and that he was following an appropriate medication protocol (R. at 232).

Further, in his regulations, the Commissioner provides guidelines that determine when an impairment will be considered "marked" within the domain of health and physical well-being.

> For the sixth domain of functioning, "Health and physical well-being," we may also consider you to have a "marked" limitation if you are frequently ill because of your impairment(s) or have frequent exacerbations of your impairment(s) that result in significant, documented symptoms or signs. For purposes of this domain, "frequent means that you have episodes of illness or exacerbations that occur on an average of 3 times a year, or once every 4 months, each lasting 2 weeks or more. We may also find that you have a "marked" limitation if you have episodes that occur more often than 3 times in a year or once every 4 months but do

not last for 2 weeks, or occur less often than an average of 3 times a year or once every 4 months but last longer than 2 weeks, if the overall effect (based on the length of the episode(s) or its frequency) is equivalent in severity.

See 20 C.F.R. § 416.926a(3)(e)(ii)(2)(iv).

While S. A.'s medical history documents that he has had periods of time when his blood sugars have not been under control, if Plaintiff and S. A. take care to follow his treating physician's guidance on diet and medication, he responds well to treatment and experiences minimal exacerbation of his diabetes (R. at 118-120, 121, 122, 190, 191, 192, 232-233).  The exacerbations to S. A.'s diabetes meet neither the frequency nor the severity guidelines contained in the regulations.  Thus,  S. A.'s limitations from his diabetes, as well as other severe impairments including asthma, borderline intellectual functioning, and behavior and speech problems, do not rise to the level of a marked impairment in the domain of health and physical well-being.  The ALJ was correct when he found that S. A. has less than a marked impairment in this domain (R. at 27-28). Further, the Court finds the Appeals Council properly declined Plaintiff's request for review of the ALJ's decision, as Plaintiff's new evidence is not material to the time frame relevant to Plaintiff's claim.  Moreover, even assuming, arguendo, that S. A.'s brief hospitalization in October 2006 reflects a post-decision worsening of his diabetes, it does not establish that S. A. had a marked impairment in the domain of health and physical well-being at the time of the ALJ's decision.

## Conclusion

After carefully examining the administrative record, the Court finds substantial evidence supports the ALJ's decision in this case, including the objective medical evidence, supported medical opinions, and other evidence concerning S. A.'s limitations within the domains of functioning.  It is clear to the Court that the ALJ thoroughly examined the record, afforded appropriate weight to all the medical and other evidence, including S. A.'s treating physicians, consultative examiners, State agency medical consultants, and educational personnel, and afforded S. A.'s subjective claims of limitations an appropriate weight when rendering his decision that Plaintiff is not disabled.  The Court finds no reversible error, and further finding that substantial evidence supports the ALJ's decision, the Court will grant Defendant's Motion for Judgment on the Pleadings and deny Plaintiff's motion seeking the same.


IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings is GRANTED.


FURTHER, that Plaintiff's Motion for Judgment on the Pleadings is DENIED.


FURTHER, that the Clerk of the Court is directed to take the necessary steps to close this case.

SO ORDERED.


Victor E. Bianchini
United States Magistrate Judge


Dated:  July 1, 2009
        Syracuse, New York